```
UNITED STATES DISTRICT COURT                    USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                   DOCUMENT
------------------------------------------------X   ELECTRONICALLY FILED
                                                :   DOC #: _____
BUILDING SERVICE 32 BJ HEALTH FUND,             :   DATE FILED: June 15, 2018
                                                :
                 Plaintiff,                     :
                                                :
           -v-                                  :   15-cv-3598 (KBF)
                                                :
NUTRITION MANAGEMENT SERVICES,                  :   OPINION & ORDER
CO.,                                            :
                                                :
                 Defendant.                     :
                                                :
------------------------------------------------X
```

KATHERINE B. FORREST, District Judge:

Plaintiff Building Service 32BJ Health Fund (the "Fund"), an employee-benefit plan, brought this action for violation of section 515 of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145, against defendant Nutrition Management Services Company ("Nutrition"). The Fund's claims relate to Nutrition's alleged failure to make contributions in the amount of $275,839.65 for the period from August 1, 2008 through April 30, 2015.

The Fund moved for summary judgment on June 1, 2016. (ECF No. 20.) In opposition Nutrition argued, <u>inter alia</u>, that the current action was barred by <u>res judicata</u>. More specifically, it claimed that a settlement agreement it entered into with the Fund on April 10, 2012 (the "Settlement Agreement") was intended to constitute a full resolution of all claims that in any way relate to the period from August 1, 2008 through January 31, 2012.

On February 10, 2017, this Court granted the motion in part, finding that the Fund was entitled to summary judgment for the period between February 1, 2012 and May 31, 2013.  (ECF No. 55.)  The Court ordered additional limited discovery for the period between June 1, 2013 and April 30, 2015 and denied summary judgment as to the period between August 1, 2008 and January 31, 2012—finding that the "motion papers were sufficiently unclear and the Fund's evidence . . . sufficiently sparse" and therefore a triable issue existed.  (ECF No. 55.)  The Court noted, however, that a successful summary judgment motion might be "lurking behind" the Fund's claims.  (Id.)

On consent of the parties, the Court held a trial on the papers, with closing arguments live on February 16, 2018.  The heart of the issue to be resolved at trial was the scope of the April 10, 2012 Settlement Agreement, and whether it barred the instant action.  Plaintiff argued that the Settlement Agreement contained an important exclusion—that the agreement referred only to "contributions based on the Employer's previous reporting and do not include unpaid contributions, if any, reported by future Funds' payroll audits."  (PX 5 ¶ 3.)  It therefore argued that the current action, based on a delinquent contribution resulting directly from just such an audit, is not covered in the previous action, and is therefore not barred.

For its part, defendant argued that the sweeping language of the Settlement Agreement—including the phrases "in full resolution" of a previous action and "in full satisfaction of unpaid benefit contributions for the reporting period beginning

August 1, 2008 through January 31, 2012," bars the Fund's claim for that time period. (Id. ¶ 1.)

The Court agrees with plaintiff—the specific language in the Settlement Agreement is unambiguous and explicitly allows claims arising from an audit such as in the present action. Plaintiff is therefore entitled to damages both for the period in controversy—August 1, 2008 through January 31, 2012—and also for the period from June 1, 2013 through April 30, 2015.[1]

The instant Opinion & Order constitutes the Court's findings of fact and conclusions of law.

I. FINDINGS OF FACT

The Court's findings of fact are made by a preponderance of the evidence.

A. <u>Witnesses and Documents</u>

Plaintiff's three witnesses testified by declaration and deposition:[2] Lazaro Gonzalez, former CFO of the Fund, Shahnawaz Khan, the Fund's outside auditor, and Michael Fox, a payroll audit manager for the outside auditor. Plaintiff also introduced nine documents, including the Settlement Agreement.

For the defendant, Joseph Roberts, the CEO of Nutrition, and Joseph Mazzoni, a Vice President of Nutrition, both testified by declaration and deposition. Defendant introduced eleven documents, including emails between the parties.

---

[1] Defendant makes no argument that it should not be held liable for the June 1, 2013 through April 30, 2015 period.
[2] The parties' designated testimony constituted cross-examination.

3

B. Relationship between the Parties

At all times pertinent to this action, Nutrition and Local 32BJ were parties to one or more collective bargaining agreements ("CBAs") and memoranda of agreements ("MOAs"); under the terms set forth in the CBA, defendant was required to make contributions to the Fund. (ECF No. 72, Joint Pre-Trial Order, ¶¶ 1–2.) Furthermore, the CBA explicitly states that the Fund will be managed "under the terms and provisions of the Trust Agreement." (PX 1 Art. 21.) On April 30, 2015, 32BJ ceased representing defendant's employees; its obligation to remit contributions therefore ceased at that time. (ECF No. 72 ¶ 19.)

C. Prior Action between the Parties

On May 18, 2011, plaintiff sued defendant in this District (11-cv-3380) seeking recovery of unpaid contributions in the amount of $547,164.00 plus interest and liquidated damages for a period commencing August 2009. The Court dismissed the case with prejudice on or about March 14, 2012, based upon the parties' representation that they had reached a settlement.

D. Settlement Agreement

On April 10, 2012, the parties entered into the Settlement Agreement. The Agreement provided that defendant "pay the amount of $300,000.00 to the Fund in full satisfaction of unpaid benefit contributions for the reporting period beginning August 1, 2008 through January 31, 2012."[3] (PX 5 ¶ 1.) However, the Agreement

---

[3] Far more was at stake—Roberts testified that he believed the delinquencies totaled about $600,000. (Roberts Dep. 9:22.)

4

also contained a critical exclusion—its terms "referred only to those contributions based on Nutrition's previous reporting and did not include unpaid contributions, if any, reported by future Funds' payroll audits." (Id. ¶ 3.) It therefore released defendant "from any and all claims through January 31, 2012 <u>subject to the condition specified above</u>." (Id.) (emphasis added).

Plaintiff and defendant testified to a different understanding of this exclusion—the Court credits Gonzales's testimony that the exclusion represented "standard language" in Fund settlement agreements for unpaid benefit contributions. (Gonzales Decl. ¶ 15.) He explained that there are two ways in which an employer can accrue a delinquency in his required benefit contributions: 1) a failure to pay or underpayment for those employees who the employer has reported to the Fund for benefit coverage; and 2) unpaid contributions for employees never reported to the Fund in the first instance—in other words, employees that are eligible for coverage under the CBA but for some reason were not reported for coverage by the employer. This second type of delinquency can be detected <u>only</u> by a subsequent payroll audit of the employer. Gonzales testified that, as a result, all such Settlement Agreements include the exclusion.

Roberts testified that his understanding of the exclusion—which he never expressed to the plaintiff—was that it applied to audits of <u>future periods</u>, not to future audits of the period for which he claims he thought he was buying peace. Roberts's unexpressed understanding cannot modify the unambiguous terms of the contract.

5

E.  Audits after the Settlement Agreement

In or about November 2013, about a year and a half after the parties entered into the Settlement Agreement, plaintiff conducted an audit of defendant; this audit covered the period between August 1, 2008 and May 31, 2013.  (ECF No. 72 ¶ 10.)  The principal amount originally claimed in the audit as a deficiency was $254,373.65; this amount was subsequently revised to $244,258.65.  (Id. ¶¶ 13–14.)  After an adjustment to the audit, the principal amount for the deficiency claimed for the period from August 1, 2008 through January 31, 2012 was $169,195.65, and the principal amount for the period from February 1, 2012 through May 31, 2013 was $75,063.00.  (Id. ¶¶ 15, 16.)

After commencing this lawsuit, plaintiff commenced an additional audit for the period from June 1, 2013 through April 30, 2015.  (Id. ¶17.)  The principal amount of the deficiency claimed for this period was $31,581.00.  (Id. ¶ 18.)

II. CONCLUSIONS OF LAW

Courts interpret contracts to give meaning to the parties' intent.  Klos v. Lotnicze, 133 F.3d 164, 168 (2d Cir. 1997).  "When interpreting an unambiguous contract, words and phrases are given their plain meaning.  Under New York law, therefore, a court must enforce that plain meaning, rather than rewrite an unambiguous agreement."  Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 139 (2d Cir. 2000) (internal citations, quotation marks, and alternations omitted); Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2d Cir. 2000).  If the intent of parties "is discernible from the plain meaning of the language of the contract, there is no

need to look further." Evans v. Famous Music Corp., 807 N.E.2d 869, 872 (N.Y. 2004). This is so even if the parties to a contract later express a different understanding of what are otherwise clear terms. Metro. Life. Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990) ("Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation.") In addition, the unexpressed intent of a party to a contract does not alter its unambiguous meeting. See FaceTime Commc'ns, Inc. v. Reuters Ltd., 2008 WL 2853389, at *5 (S.D.N.Y. July 22, 2008). Here, the language of the Settlement Agreement is straightforward and unambiguous.

By its express terms, it excludes future audits—that is, audits conducted subsequent to the date of the Settlement Agreement, irrespective of the period to which those audits relate. To read Paragraph 3 (the exclusion) as defendant does would render it altogether superfluous. Certainly the parties would have no need to provide an explicit exclusion as to dates not even referenced in the Settlement Agreement—no party could credibly argue that anyone would read the Agreement to settle all claims for all time.

And even if the Settlement Agreement was ambiguous, nothing in the testimony defendant has given suggests that there was an expressed intent that differs from what the Agreement clearly states on its face. (And unexpressed intent is of no relevance.) Rather, it has proffered evidence of its own misunderstanding—but this alone is not enough to render the contract ambiguous.

7

Based upon the record, the Court therefore finds that the present action is not barred by res judicata. The Settlement Agreement applies only to the issues raised as of the time it was signed; and not claims arising from future audits.

Section 515 of the ERISA provides as follows:

Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement, shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or agreement.

Section 502(g)(2) of ERISA further provides that:

In any action under this title by a fiduciary for or on behalf of a plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the Court shall award the plan:
- (A) the unpaid contributions;
- (B) interest on the unpaid contributions;
- (C) an amount equal to the greater of:
    - (i) interest on the unpaid contributions;
    - (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);
- (D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and
- (E) such other legal or equitable relief as the court deems appropriate. For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan or, if none, the rate prescribed under Section 6621 of the Internal Revenue Code.

The provisions in Section 502(g) for interest, liquidated damages, and legal fees are mandatory. Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors, 68 F.3d 1502 (2d Cir. 1995). The Second Circuit consistently applies delinquency policies as the "plan" for purposes of calculating interest and liquidated

8

damages rate.[4] See id. at 1508 (calculating damages under the Collections Policy); Trs. of the New York City Dist. Council of Carpenters Pension Fund v. Installations of Am., Inc., 2017 WL 384694, at *4 (S.D.N.Y. Jan. 26, 2017) (calculating prejudgment interest based upon a "Policy" for collection of Employer Contributions); see also Health & Welfare Fund of the United Food & Commercial Workers Local 2013 v. Precision Abstract, LLC, 2017 WL 4325713 (E.D.N.Y. May 19, 2017) (calculating interest on unpaid contributions according to the terms of the Collection Policy).

Thus, the Court finds that plaintiff is entitled to full relief as mandated under ERISA, including an award of principal, interest, liquidated damages, and reasonable attorney's fees and costs.

The Fund maintained two different collection policies over the course of the relevant period. (PXs 7, 8.) Accordingly, for delinquencies prior to August 1, 2012, the Court awards interest at the rate of six percent per year and liquidated damages at the rate of two percent a month on the unpaid principal; for delinquencies accruing on or after August 1, 2012, the Court awards interest at the rate of nine percent per year from the date of delinquency and liquidated damages at a rate of twenty percent.

Judgment is therefore awarded to plaintiff in the amount of $244,258.65 for the audit covering the period from August 1, 2008 through May 31, 2013 and in the

---

[4] The Jaspan line of cases cited by defendant is inapposite where, as here, defendant specifically agreed to bound by the terms of the Trust Agreement.

amount of $31,581.00 for the audit covering the period from June 1, 2013 through April 30, 2015.

III. CONCLUSION

As set forth above, plaintiff has demonstrated its entitlement to delinquent contributions in the amount of $275,839.65 and to interest and liquidated damages. Plaintiff shall submit a proposed form of judgment to the Court within one week of this Opinion & Order.

Plaintiff is further instructed to file an application for attorney's fees and costs within two weeks of this Opinion & Order.

SO ORDERED.

Dated:   New York, New York
         June 15, 2018

_____
KATHERINE B. FORREST
United States District Judge